IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| DANNY BRASHEAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 1:18-cv-00059 |
| ) | |
| CCG SYSTEMS, INC, ) | JUDGE CAMPBELL |
| ) | MAGISTRATE JUDGE FRENSLEY |
| Defendant. ) | |

## MEMORANDUM AND ORDER

### I. Introduction

Pending before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. No. 7), to which the Defendant has filed a Response (Doc. No. 15) in opposition. Plaintiff has filed his own Declaration (Doc. No. 10-1) in support of the Motion, and Defendant has filed the Declaration of Joseph Healey, its Chief Executive Officer (Doc. No. 15-1). For the reasons set forth below, the Motion for Preliminary Injunction (Doc. No. 7) is **DENIED.**

### II. Plaintiff's Allegations

Plaintiff Danny Brashear initially filed this action against Defendant CCG Systems, Inc. d/b/a Faster Asset Solutions ("CCG") in Marshall County Chancery Court on July 18, 2018. (Doc. No. 1-1). Defendant subsequently removed the case to this Court based on diversity jurisdiction. On September 24, 2018, Plaintiff filed a First Amended Complaint (Doc. No. 31).

Plaintiff seeks a declaratory judgment that he is not bound by a "Non-Disclosure and Non-Compete Agreement" ("NCA") (Doc. No. 1-1, at 8-10) he signed while employed by CCG. Plaintiff alleges he was hired by CCG on July 31, 2006, and was "forced" to sign the NCA in 2009, after having worked for CCG for over three years. (Doc. No. 31). Plaintiff alleges the

NCA is unenforceable because he signed it "without consideration and under duress" to avoid termination, and was never presented with a signed copy. (*Id.*) Plaintiff contends the NCA is also unenforceable because it is too broad in its geographical application and as to time. Plaintiff also asserts a claim for retaliatory discharge based on his termination, on July 27, 2018, by CCG while this action was pending. In addition to a declaratory judgment, Plaintiff seeks injunctive relief, as well as compensatory and punitive damages.

III. Analysis

In determining whether to issue a preliminary injunction under Federal Rule of Civil Procedure 65, the Court is to consider: (1) whether the movant has shown a strong or substantial likelihood of success on the merits; (2) whether irreparable harm will result without an injunction; (3) whether issuance of a preliminary injunction will result in substantial harm to others; and (4) whether the public interest is advanced by the injunction. *Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012); *Myers v. Memorial Health Syst. Marietta Mem. Hosp.*, 2017 WL 1407572 at * 4 (S.D. Ohio Apr. 20, 2017).

Plaintiff argues he has shown a likelihood of success on the merits that the NCA is unenforceable because he signed it without consideration and under duress. In his Declaration, Plaintiff does not elaborate on this contention, but simply states he signed the NCA "under duress and I was never provided any consideration for entering into the agreement." (Doc. No. 10-1 ¶ 5). Plaintiff also states he was not provided a signed copy of the NCA until after he filed this lawsuit. (*Id.*)

In addressing the merits of Plaintiff's argument, the parties apply both Tennessee and Virginia law. The NCA contains a forum selection clause referencing Virginia state courts and a choice of law clause referencing Virginia law. (Doc. No. 1-1, at 2). Given that the parties assume

the law of both states on the relevant issues is the same, and thus, have not engaged in a choice of law analysis, the Court will make the same assumption.

Tennessee courts have defined duress in the breach of contract context as "'a condition of mind produced by the improper external pressure or influence that practically destroys the free agency of a party, and causes him to do an act or make a contract not of his own volition, but under such wrongful external pressure.'" *In re Estate of Creswell*, 238 S.W.3d 263, 267 (Tenn. Ct. App. 2007) (quoting *Rainey v. Rainey*, 795 S.W.2d 139, 147 (Tenn. Ct. App. 1990)). "We have further defined duress as consisting of 'unlawful restraint, intimidation, or compulsion that is so severe that it overcomes the mind or will of ordinary persons.'" *Id.* (quoting *Boote v. Shivers*, 198 S.W.3d 732, 745 (Tenn. Ct. App. 2005)). Virginia courts apply a similar definition: "'Duress exists when a defendant commits a wrongful act sufficient to prevent a plaintiff from exercising his free will, thereby coercing the plaintiff's consent.'" *Lee v. Fairfax County School Bd.,* 621 Fed. Appx 761, 762 (quoting *Goode v. Burke Town Plaza, Inc.,* 246 Va. 407, 436 S.E.2d 450, 452 (1993)). Virginia courts rarely consider the exertion of economic pressure to constitute duress. *Id.; Update, Inc. v. Samilow,* 311 F.Supp.3d 784, 795 (E.D. Va. 2018) (". . . the fact that a salary increase was contingent on acceptance of non-compete and non-solicitation clauses does not, on this record, support a claim of duress.")

Plaintiff does not address the legal definition of duress in his filings. He simply states in his Declaration that he signed the NCA "under duress." This conclusory allegation does not persuade the Court that Plaintiff satisfies the definition of duress under either Tennessee or Virginia law. Accordingly, the Court concludes Plaintiff has failed to establish a likelihood of success on the merits regarding this argument.

As for Plaintiff's argument that the NCA lacked consideration, Tennessee courts have held continued employment may constitute adequate consideration for a non-competition agreement signed by an existing employee. *Central Adjustment Bureau, Inc. v. Ingram,* 678 S.W.2d 28, 34-35 (Tenn. 1984). In *Central Adjustment Bureau*, the court held there was adequate consideration for a non-competition agreement where the employee continued his employment for seven years after signing the agreement, received salary increases during that time, and left his job voluntarily. *Id.* s*ee also American Home Shield Corp. v. Ozur*, 2016 WL 8738243, at *4 (W.D. Tenn. Sept. 13, 2016) (finding adequate consideration for non-compete contract where employee continued to work for nearly two and a half years after signing the agreement, and employee voluntarily left his employment). Virginia courts have held an increase in salary accompanying the signing of a non-compete agreement constitutes adequate consideration for the agreement. *Update, Inc.*, 311 F.Supp.3d at 795.

Here, Plaintiff continued his employment for approximately nine years after signing the NCA, and remained employed until after he filed this action claiming the NCA was unenforceable.[1] Defendant contends, and Plaintiff does not dispute, that Plaintiff was paid a bonus of $459 for signing the agreement, and received salary increases, bonuses, and stock options over the years he remained employed. (Doc. No. 15-1 ¶¶ 12-15). Under these circumstances, Plaintiff has not shown the NCA lacked consideration under Tennessee or

---

[1] In his Declaration, Mr. Healey states that, in a conversation with Plaintiff after the company was served with this lawsuit, Plaintiff expressed his desire to leave the company and search for another job. (Doc. No. 15-1 ¶ 17; Exhibit B). In subsequent conversations, Mr. Healey said the company offered Plaintiff another position at the company at a higher salary, and Plaintiff declined the offer. (*Id.*) According to Mr. Healey, the company also offered to contact current customers to seek placement for Plaintiff in the governmental sector, where Plaintiff had worked previously, but Plaintiff also declined that offer. (*Id.*)

Virginia law. Therefore, he has not established a likelihood of success on the merits as to his lack of consideration argument.

To the extent Plaintiff argues the NCA is unenforceable because he did not receive a signed copy until recently, he has not cited any authority supporting his argument. Thus, he has failed to establish a likelihood of success on the merits as to this argument.

Even if the contract was validly formed, Plaintiff contends, the restrictions in the NCA are not enforceable because they are not supported by a legitimate business interest and are unreasonable. Although covenants not to compete are disfavored in Tennessee, they are enforceable if "'there is a legitimate business interest to be protected and the time and territorial limitations are reasonable.'" *Columbus Medical Services, LLC v. Thomas,* 308 S.W.3d 368, 384 (quoting *Murfreesboro Med. Clinic, P.A. v. Udom*, 166 S.W.3d 674, 678 (Tenn. 2005)). To establish it has a legitimate business interest to be protected, an employer must show "special facts beyond protection from ordinary competition that would give *the employee* an unfair advantage in competing with the employer." *Id.*, at 384-85 (emphasis in original). In making this determination, the court is to consider "'(1) whether the employer provided the employee with specialized training; (2) whether the employee is given access to trade or business secrets or other confidential information; and (3) whether the employer's customers tend to associate the employer's business with the employee due to the employee's repeated contacts with the customers on behalf of the employer.'" *Id.*, at 385 (quoting *Vantage Technology, LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999)). Virginia law is similar on this point. *Omniplex World Services Corp. v. US Investigations Services, Inc.,* 270 Va. 246, 618 S.E.2d 340, 249-50 (2005); *Modern Environments, Inc. v. Stinnett*, 263 Va. 491, 561 S.E.2d 694, 695-696 (2002) (employer bears the burden to show the restraint is no greater than necessary to protect a

5

legitimate business interest, is not unduly harsh or oppressive in curtailing an employee's ability to earn a livelihood, and is reasonable in light of sound public policy.)

In his Declaration, Plaintiff states: "I do not have any specialized knowledge that could harm my former employer and I did not receive specialized training with CCG Systems, Inc." (Doc. No. 10-1 ¶ 9). Plaintiff further states: ". . . the only information I have regarding my former employer, which fired me without cause when I filed this action, is within the public domain and not secret. I have no access to the proprietary information that CCG Systems, Inc. has such as customer lists." (*Id.* ¶ 10).

By contrast, Mr. Healey, Defendant's CEO, states in his Declaration that, during his employment, Plaintiff received extensive training regarding Defendant's customers and their processes, as well as training on software to be used by customers, and how to train customers on the software. (Doc. No. 15-1 ¶ 7). At the time of his termination, according to Mr. Healey, Plaintiff worked directly with and trained Defendant's customers on its fleet management information system. (*Id.*) Mr. Healey further states Plaintiff possesses "specific and intimate knowledge of CCG's active potential customers and sales leads and can use this knowledge to CCG's competitors' lucrative benefit." (*Id.*) In addition, Plaintiff was involved in numerous discussions regarding confidential product development and the functions necessary to give Defendant a competitive edge. (*Id.*) Mr. Healey further states that, at Plaintiff's request, he attended industry trade shows, and in June, 2018, Plaintiff spoke to an industry group, including prospective customers, on new functions and features associated with Defendant's flagship product. (*Id.* ¶ 8). According to Mr. Healey, the company spent significant sums sending Plaintiff to these industry events "as a face of the Company." (*Id.*)

Based on Mr. Healey's Declaration, the Court concludes Plaintiff has not established a likelihood of success on the merits of his argument that CCG lacked a legitimate business interest in the NCA. Mr. Healey's Declaration outlines the extensive training Plaintiff received during his employment and Plaintiff's interactions with CCG's customers on behalf of the company. Plaintiff's vague and conclusory statements to the contrary are unpersuasive.

Plaintiff also contends the terms of the NCA, which restrict his employment throughout the United States and Canada for two years, are unreasonable. In Tennessee, the time and territorial limits in a covenant not to compete must be "'no greater than is necessary to protect the business interests of the employer.'" *Vantage Technology, LLC v. Cross*, 17 S.W.3d 637, 647 (Tenn. Ct. App. 1999) (quoting *Allright Auto Parks v. Berry,* 219 Tenn. 280, 409 S.W.2d 361, 363 (1966)). Virginia courts apply a similar standard. *See, e.g., Capital One Financial Corp. v. Kanas*, 871 F.Supp.2d 520, 530 (E.D. Va. 2012) ("A reasonable non-compete is: (1) narrowly drawn to protect the employer's legitimate business interest, (2) not unduly burdensome on the employee's ability to earn a livelihood, and (3) consistent with public policy."); *Simmons v. Miller*, 261 Va. 561, 580-81, 544 S.E.2d 666 (2001).

The NCA's non-compete clause provides:

> (a) Employee specifically agrees that for a period of two years following cessation of employment with Employer. Employee will not engage, directly or indirectly, either as proprietor, stockholder, partner, officer, employee, consultant, advisor or otherwise, in any business within the United States and Canada that distributes or sells products or provides services similar to those distributed, sold, or provided by Employer or that compete against the Employer's products or services, as of the date of Employee's cessation of employment from Employer.

(Doc. No. 1-1, at 2).

In his Declaration, Mr. Healey represents that, after Plaintiff filed this lawsuit, CCG "modified the Agreement by providing an exception to the NDA/Non-Compete Agreement for

7

him and for all employees, such as Plaintiff, who came to CCG from Municipal Government" resulting in "the Agreement only restricting Plaintiff from accepting employment from approximately ten or fewer potential competitors of the Company." (Doc. No. 15-1 ¶ 17). According to Mr. Healey, Defendant subsequently advised Plaintiff that it would only seek to enforce the revised Agreement to the extent it prohibits him from employment with a direct competitor." (*Id.*)

Plaintiff has not addressed this concession by Defendant. Plaintiff's Declaration merely states he will be irreparably harmed "if I am restrained from earning a living." (Doc. No. 10-1 ¶ 8). Plaintiff does not identify any particular competitor for whom he intends to work, nor does he address the number of potential employers in the industry, or explain why the revised restrictions are greater than necessary to protect Defendant's legitimate and protectible business interests. Consequently, Plaintiff has failed to establish a likelihood of success on the merits that the restrictions are unreasonable.

As for irreparable harm, as discussed above, Plaintiff states only that he will be irreparably harmed if he is restrained from earning a living. Plaintiff does not elaborate, however, as to how the NCA's restraints prevent him from doing so. Nor has Plaintiff demonstrated that monetary damages will be an inadequate remedy should he ultimately prevail. Accordingly, Plaintiff has failed to establish irreparable harm.

Finally, Plaintiff has not addressed whether issuance of a preliminary injunction will result in substantial harm to others,[2] nor has he addressed whether an injunction advances the public interest. Accordingly, the Court concludes these factors do not support issuance of an injunction.

---

[2] On the other hand, Mr. Healey asserts that Plaintiff's employment with a competitor could damage the company in an amount exceeding $75,000. (Doc. No. 15-1 ¶ 18).

For the reasons set forth above, Plaintiff has failed to establish the requirements for issuance of a preliminary injunction under Rule 65, and therefore, his motion for preliminary injunction is denied.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE